NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALBERT D. FULLER, CHARLES A. STANZIALE, JR., and INTEGRATED PACKAGING CORPORATION-DETROIT,<br><br>Plaintiffs,<br><br>v.<br><br>PEPSICO, INC. and PEPSI-COLA ADVERTISING AND MARKETING, INC.,<br><br>Defendants. | Civil Action No.:<br>11-4989 (PGS)<br><br>MEMORANDUM & ORDER |

SHERIDAN, U.S.D.J.

This matter comes before the Court on defendants PepsiCo, Inc. ("PepsiCo") and Pepsi-Cola Advertising and Marketing, Inc.'s ("Pepsi AM") (collectively "Defendants") motion to dismiss plaintiffs Albert D. Fuller, Charles A. Stanziale, and Integrated Packaging Corporation-Detroit's ("IPC Detroit") (collectively "Plaintiffs") Amended Complaint. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

I

This action arises out of a corrugate box supply agreement ("Supply Agreement") entered into by and between Integrated Packaging Corporation of New Jersey ("IPC New Jersey") and Defendants. (Am. Compl., Ex. A at 2 [hereinafter Agreement]).[1] According to Plaintiffs,

---

[1] Defendants argue that the Supply Agreement was only between IPC New Jersey and Pepsi

negotiations for the Supply Agreement began in 2007, when PepsiCo decided to concentrate its United States corrugate box suppliers into five distinct geographic sectors. (Am. Compl. ¶¶ 19-20). At that time, Mr. Fuller was President/CEO of three corrugate box suppliers: IPC New Jersey, IPC Detroit, and IPC Louisiana, LLC. (*Id.* at ¶ 9). Plaintiffs allege that PepsiCo promised to make IPC New Jersey the sole corrugate box provider for its Northeast sector provided that IPC New Jersey materially upgraded its plant and improved its operations. (*Id.* at ¶¶ 20-21). Plaintiffs further allege that this promise was made to Mr. Fuller in both his official capacity as head of IPC New Jersey and IPC Detroit as well as his individual capacity. (*Id.*).

According to Plaintiffs, IPC New Jersey was subsequently upgraded in accordance with PepsiCo's requirements. (*Id.* at ¶¶ 21, 24). Plaintiffs claim the upgrade cost over $12 million, and that $10.25 million in financing was advanced by Mr. Fuller and IPC Detroit. (*Id.* at ¶¶ 21, 24).

On May 1, 2009, the Supply Agreement was executed. (Agreement at 1). Under the Supply Agreement, IPC New Jersey was made sole corrugate box provider of PepsiCo's Northeast sector for an initial term lasting from Jan. 1, 2008 to Dec. 31, 2012. (Agreement §§ 2-3). According to Plaintiffs, IPC New Jersey successfully performed under the Supply Agreement while Defendants repeatedly breached. (Am. Compl. ¶¶ 28, 30-39). Plaintiffs allege that as a result of Defendants' breach, IPC New Jersey was forced to enter into New Jersey state receivership. (*Id.* at ¶ 44). Since entering receivership, IPC New Jersey's interests have been represented by Mr. Stanziale, a party appointed by the Superior Court of New Jersey as assignee for the benefit of IPC New Jersey's creditors. *Matter of Integrated Packaging Corp.*, Dkt. No. 232533 (N.J. Ch. May 06, 2011).

---

AM. (Supp. Br. at 17). However, by the express terms of the Supply Agreement, Pepsi AM acts "on behalf of itself [and] its parent." Agreement at 1.

Plaintiffs' Amended Complaint alleges four separate causes of action. Mr. Stanziale alleges that Defendants breached the Supply Agreement (Count I), breached the implied duty of good faith and fair dealing (Count II), and were unjustly enriched (Count III). (Am. Compl. ¶¶ 55-71). Mr. Fuller and IPC Detroit allege that Defendants are liable to each Plaintiff for the funds directed toward IPC New Jersey under the equitable theory of promissory estoppel (Count IV). In response to the Amended Complaint, Defendants moved to dismiss all counts with prejudice. (Dkt. No. 24).

II

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See, e.g., Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950. While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). As the Supreme Court has recently held, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 500 U.S. at 555 (internal citations and quotations omitted); *see also Iqbal*, 129 S. Ct. at 1949-50.

III

A. Breach of Contract

    To properly allege a breach of contract claim, a plaintiff must allege (1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of that contract, and (4) resulting damages. *JP Morgan Chase v. J.H. Electric*, 69 A.D.3d 802, 803 (NY App. Div. 2010).[2] In their motion to dismiss the complaint, Defendants advance four arguments. First, Defendants claim that the Supply Agreement was not an agreement to make IPC New Jersey a sole corrugate box provider of PepsiCo's Northeast sector. Supp. Br. at 13-14. This argument is belied by the agreement itself, and therefore rejected. *See* Agreement § 3.[3] Second, Defendants claim that Plaintiffs failed to allege that Defendants violated the Supply Agreement. Supp. Br. at 11-12. Importantly, this second argument is premised upon the first. *See* Supp. Br. 11-14. In the second argument, Defendants merely claim that because the Supply Agreement was not a sole service agreement, Plaintiffs' assertion that Defendants awarded business to alternate box companies cannot constitute a breach. *Id.* For obvious reasons, this argument must also fail. Third, Defendants seek to interject evidence that IPC New Jersey breached the contract and that Defendants' response to the breach conformed with the Supply Agreement's terms. *Id.* at 13-14. As the Court is required on a motion to dismiss to accept all of the allegations in a complaint as true, *Ashcroft v. Iqbal*, 129 S. Ct.

---

[2] The Supply Agreement is governed by the laws of New York state. Agreement § 18.

[3] On a motion to dismiss, in addition to the complaint's allegations, courts may consider exhibits to the complaint, documents referred to in the complaint or integral to the claim, and items appearing in the record of the case. *Buck v. Hampton Twp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004). The Supply Agreement is integral to the claim and was attached to the Amended Complaint.

1937, 1949-50 (2009), and as Plaintiffs allege that they did not breach the Supply Agreement, Am. Compl. ¶ 28, such evidence is better left for discovery.  Finally, Defendants argue that Plaintiffs cannot allege "resulting damages" because the Supply Agreement forestalls Defendants' liability for "lost profits or any indirect, incidental, special, punitive, exemplary or consequential damages of any kind, howsoever." Supp. Br. (citing Agreement § 12).  However, the Supply Agreement specifically allows for Defendants' liability in the event of Defendants' gross negligence or willful misconduct. Agreement § 12.  As Plaintiffs' allegations could constitute willful misconduct, Defendants' argument is without merit. *See* Am. Compl. ¶¶ 30-38; *see also Kalisch-Jarcho, Inc. v. New York*, 58 N.Y.2d 377, 385 (1983).  Thus, Defendants' motion to dismiss Plaintiffs' breach of contract claim is denied.

B.  Breach of Implied Duty of Good Faith and Fair Dealing

Under New York law, all contracts imply a covenant of good faith and fair dealing. *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).  The covenant embraces the pledge that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).  However "[t]o sustain a breach of the implied covenant claim, the claimant must allege and show that the other party 'exercised a [contractual] right malevolently, for its own gain as part of a purposeful scheme designed to deprive [claimant] of the benefits' under the contract." *Wilmington Trust Co. v. Strauss*, No. 601192-2003, 2006 WL 3076611 at *8 (N.Y. Sup.. Oct. 30, 2006) (J. Fried) (citing *Richbell Info Svcs., Inc. v. Jupiter Partners, L.P.*, 309 A..D.2d 288, 302 (1st Dept 2003)).

Defendants argue that Plaintiffs' breach of the implied duty of good faith and fair dealing

5

claim fails as a matter of law because Plaintiffs neglected to allege that Defendants engaged in 'a malevolent, purposeful scheme.' Supp. Br. at 10.  However this argument is directly contradicted by the Amended Complaint, and is therefore denied. Am. Compl. ¶¶ 30-39.

Defendants also argue that Plaintiffs' breach of the implied duty of good faith and fair dealing claim is duplicative. Reply Br. at 10-11.  Under New York law, "a cause of action alleging breach of the implied covenant of good faith and fair dealing must be dismissed if it is merely duplicative of a breach of contract claim." *Refreshment Mgmt. Servs., Corp. v. Complete Office Supply Warehouse Corp.*, 933 N.Y.S.2d 312, 315 (App. Div. 2d Dept. 2011).  In response to Defendants' argument, Plaintiffs urge that the Amended Complaint includes facts "that are wholly different from and supplement to the facts underlying [the] breach of contract claim. Sur-Reply Br. at 1.  Specifically, Plaintiffs quote from Count II of Plaintiff's Amended Complaint, which states: "PepsiCo and/or Pepsi AM usurped IPC New Jersey's business opportunities, made unfair and inaccurate comments about its performance, and undercut IPC New Jersey's contract with its own supplier by entering into its own contract with that supplier." *Id.* at 2 (citing Am. Compl. ¶ 64). Plaintiffs also identify several allegations in the Amended Complaint that, according to Plaintiffs, are not part of the action for breach of contract. *Id.* at 3-5

At this early stage of the proceedings and in an abundance of caution, the Court has determined that (1) at least some of the allegations Plaintiffs cite in their sur-reply brief, including references to undercutting supplier contracts, are separable from Plaintiffs' breach of contract claim; and (2) after discovery, the Court will be in a better position to determine if Plaintiff's second cause of action is duplicative. *See, e.g., Genna v. Sallie Mae, Inc.*, 11 Civ. 7371 (LBS), 2012 WL 1339482, at *2-3 (S.D.N.Y., Apr. 17, 2012).  Thus, the Court denies Defendants' motion to dismiss as to this

claim.

C.  Unjust Enrichment

To establish a claim for unjust enrichment, "a plaintiff must show that defendant received a benefit and that retention of that benefit would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994) (citing *Assocs. Commercial Corp. v. Wallia*, 211 N.J. Super. 231, 243 (App. Div. 1986)).  Importantly, recovery for unjust enrichment is only available "when there [is] no express contract providing for remuneration." *Caputo v. Nice-Pak Prods., Inc.*, 300 N.J. Super. 498, 507 (App. Div. 1997).

Defendants allege that the Supply Agreement precludes Plaintiffs' unjust enrichment claim. Supp. Br. 17-18.  According to Defendants, "the Supply Agreement is the operative document which governs the relationship between [Defendants] and IPC New Jersey." *Id.*  Plaintiffs challenge this assertion, claiming that the Amended Complaint alleges investment of significant funds and provision of numerous services outside of the scope of the Supply Agreement for which it was never compensated. Opp'n Br. at 20 (citing Am. Compl. ¶¶ 68-69).  Taking all of the allegations in Plaintiffs' Amended Complaint as true, the Court has determined that Plaintiffs' claim for unjust enrichment is cognizable.  As explained in the Court's discussion of Plaintiffs' second claim, discovery will ultimately reveal whether Plaintiffs' alleged provision of funds and services was beyond the ambit of the Supply Agreement.

D.  Promissory Estoppel

The elements of a promissory estoppel claim under New Jersey law are: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) the promisee in fact reasonably relies on the promise with (4) definite and substantial detriment as a result of the reliance.  *Toll Bros., Inc. v. Board of Chosen Freeholders of the County of Burlington* 194 N.J. 223, 253 (2008)(quoting *Lobiondo v. O'Callaghan*, 357 N.J.Super. 488, 499 (2003)).

Plaintiffs Mr. Fuller and IPC Detroit allege that Defendants failed to fulfill specific promises of awarding IPC New Jersey with a contract as well as expected business opportunities. However, as explained above, Defendants awarded IPC New Jersey such an agreement. (see generally Agreement). To the extent that Mr. Fuller and IPC Detroit allege that they suffered an "indefinite and substantial detriment," the detriment is a result of Defendant's alleged breach of the Supply Agreement, not the Defendants' alleged breach of the promise to enter said agreement.  Thus, Mr. Fuller and IPC Detroit's promissory estoppel claims as pleas are insufficient, and Defendant's motion to dismiss these claims is granted.

ORDER

For the reasons set forth above,

IT IS on this 11th day of September, 2012

ORDERED that Defendants' motion to dismiss (Dkt. No. 24) is granted in part such that Albert Fuller and IPC Detroit's claims based upon promissary estoppel (Amended Complaint, Count IV) are dismissed. All other relief sought is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.
